IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:23-cv-323

| | | |
|---|---|---|
| GABRIEL VAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| OLD EDWARDS INN AND SPA, LLC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

# I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Gabriel Van ("Plaintiff" or "Gabriel") resides in Cobb County, Georgia.

2. Defendant Old Edwards Inn and Spa, LLC ("Defendant" or the "Company") is a North Carolina corporation, with its principal office located at 3473 Satellite Blvd, Suite 211, Duluth, Georgia 30096-8691.

3. Defendant's registered agent is Orville Coward, Jr., who is located at 43 West Main Street, Franklin, North Carolina 28734-3005.

4. Plaintiff worked for Defendant at 137 South 4th Street, Highlands, North Carolina 28741.

5. While employed by Defendant, as part of that employment, Plaintiff resided at 261 Satulah Ridge Road, Highlands, North Carolina 28741.

6. Venue is proper in the Western District of North Carolina, Asheville Division, because: Old Edwards Inn and Spa, LLC has a substantial presence in Macon County, North

Carolina and conducts a great deal of business there. At all relevant times, Plaintiff worked for Defendant in Highlands, North Carolina, in Macon County. Moreover, the facts and circumstances of the case arise in Macon County, North Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Macon County, North Carolina.

## II. FACTUAL STATEMENT

7. Gabriel Van began working for the Company in or around October 2021.

8. Gabriel was a terrific employee, and the Company never voiced any concerns about his performance.

9. On or around January 27, 2022, Gabriel's physicians diagnosed him with melanoma.

10. After learning his diagnosis, Gabriel contacted his immediate boss, Kyra Russell, right away.

11. Russell told Gabriel to inform HR Director Blye Hunsinger of the diagnosis.

12. Gabriel told Hunsinger about his cancer diagnosis. Hunsinger assured Gabriel the Company would support him.

13. Between on or around January 28 and February 4, 2022, Gabriel was in regular contact with his doctors. They gave Gabriel a quick turnaround for surgery. His condition was serious, and surgery needed to happen sooner rather than later.

14. Gabriel learned he would be out of work for the surgery for roughly a month. This leave of absence qualified as a reasonable accommodation under the Americans with Disabilities Act.

15. Gabriel quickly updated Russell and Hunsinger about his need for surgery and for a reasonable accommodation (leave of absence).

16. The Company informed Gabriel his leave would not be protected by the Family and Medical Leave Act ("FMLA"), but the Company would still help him out.

17. Gabriel had his first surgery on or around February 14, 2022, followed by a second surgery on or around February 17, 2022.

18. Afterwards, Gabriel recovered and was able to return to work on or around March 23, 2022, and he continued working through on or around May 23, 2022.

19. However, about a month after his return, on or around April 22, 2022, Gabriel visited his doctor and was diagnosed with stage three Melanoma. This qualified as a disability under the Americans with Disabilities Act.

20. The next day, on or around April 23, 2022, Gabriel informed both Russell and Hunsinger he would need another surgery.

21. Gabriel's third surgery was scheduled for on or around May 23, 2022. Gabriel informed Russell and Hunsinger of this date and let them know he would be out.

22. After the third surgery, Gabriel's doctor informed him he needed radiation therapy.

23. That same day, on or around June 15, 2022, Gabriel told Russell and Hunsinger about the required radiation therapy.

24. Gabriel explained that he would have to remain on leave because the radiation would make him quite sick. At or around this time, Gabriel provided the Company with a doctor's note stating he would be able to return to work on or around October 3, 2022.

25. This request amounted to a request for a reasonable accommodation under the ADA.

26. On around August 5, 2022, Gabriel reached out to Hunsinger about his return to work.

27. During this August 5 discussion, Gabriel and Hunsinger spoke about Gabriel's radiation ending on or around August 16, 2022.

28. A couple of days later, on or around August 8, 2022, Gabriel met with Hunsinger. Hunsinger informed Gabriel the Company was letting him go because it was not sure when he was coming back.

29. The sole reason Hunsinger gave Gabriel for its termination decision was the Company did not know when Gabriel would return to work.

30. But this was either a lie or fueled by illicit bias. During this termination meeting, Gabriel literally pointed to the doctor's note—which he could see on Hunsinger's desk—and reminded him that he could return on or around October 3, 2022.

31. During the termination meeting, Gabriel also told him October 3 was the *latest* he would be back; he would likely be able to return in mid-September.

32. But the Company had already made its illegal decision. Hunsinger brushed off Gabriel and insultingly told him the Company had been good to him by allowing him to stay on Company property and keep his insurance.

33. Hunsinger said the termination would be effective August 28, 2022, and Gabriel's insurance would also terminate that day.

34. Following the termination, the Company also evicted Gabriel from his housing. As part of the job, Gabriel had discounted rent. Upon termination, he had a short timeframe to vacate the premises.

35. On or around August 10, 2022, Gabriel emailed the Company's owner, Art Williams, and complained about the termination. Gabriel let Williams know the Company was firing

4

him on the basis of his disability. He let Williams know this termination decision came just as Gabriel was nearly ready to be back and contributing again. He emphasized the termination left him without a place to live.

36. Williams responded to Gabriel's email as follows: "RICHARD......I DID NOT ANSWER THIS.......I BELIEVE IN KYRA 100%…….ART"

37. Williams' email was intended for Company executive Richard Delaney.

38. Williams ratified the Company's illegal decision to fire Gabriel.

39. Following the termination, Gabriel was able to work and could have returned to his job at the Company. Gabriel sought employment with other employers.

40. On or around November 10, 2022, Gabriel filed a charge with the EEOC through counsel.

41. On or around August 11, 2023, the EEOC issued Gabriel his Notice of Right to Sue letter from the EEOC.

### III. LEGAL CLAIMS

### Count I
(*Violations of the Americans with Disabilities Act*)

42. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

43. Plaintiff was disabled in that his cancer was a physical impairment that substantially limited one or more major life activities, including lifting, working, and sleeping, among others; and the cancer also substantially limited major bodily functions of normal cell growth and integumentary system functions.

44. Plaintiff had a record or history of a substantially limiting impairment.

45. Defendant otherwise regarded Plaintiff as having a disability.

46. Plaintiff requested a reasonable accommodation (leave of absence related to his disability).

47. Plaintiff suffered an adverse employment action when Defendant terminated his employment on the basis of his real or perceived disabilities and/or in retaliation for receiving or requesting a reasonable accommodation (medical leave).

48. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, damages related to losing his housing, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

49. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## Count II
### (*Wrongful Discharge in Violation of North Carolina Public Policy*)

50. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

51. Plaintiff was an at-will employee of Defendant.

52. Defendant employed at least fifteen (15) employees at all relevant times.

53. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability ("handicap").

54. Defendant violated the public policy of North Carolina by terminating Plaintiff because Defendant regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

55. Plaintiff qualified as an individual with a disability in that he was actually disabled/handicapped and was perceived as such.

56. Defendant violated North Carolina public policy by terminating Plaintiff because of his handicap or because it perceived him as having a disability and/or handicap.

57. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, damages related to losing his housing, diminution in his earning capacity, emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and his peace of mind has been disturbed.

58. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff reinstatement to a comparable position with lost wages, lost benefits, a tax adjustment for any lump sum payment of those wages, or an award of reasonable front pay in lieu of reinstatement;

3. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.* and the Americans with Disabilities Act;

4. Award Plaintiff liquidated damages under 29 U.S.C. § 626(b);

5. Award Plaintiff any other available punitive damages;

6. Award Plaintiff pre-judgment interest at the statutory rate;

7. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

8. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

9. Grant Plaintiff a trial of this matter by a jury.

This the 8th day of November, 2023.

/s/ *Jennifer D. Spyker*
Jennifer D. Spyker
North Carolina Bar No. 46048
Tin Fulton Walker & Owen PLLC
301 E Park Avenue
Charlotte, North Carolina 28203
Phone: (704) 338-1220
Fax: (704) 338-1312
Email: jspyker@tinfulton.com

*Attorney for Plaintiff*

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*